Judgment affirmed, with costs payable out of the fund.

---

EDWARD W. CONVERSE and Others, Respondents, *v.* DANIEL E. SICKLES, Sheriff of the City and County of New York, Appellant.

*Equity — action to impress a trust on money — waiver, by not pleading it, of an objection that the remedy is at law — false representations made to a commercial agency — sale induced by — competency of proof of like sales to others — when an admission cannot be withdrawn.*

An action brought to impress a trust upon money in the hands of a sheriff, from whose possession goods have been taken in a replevin action in which the plaintiff has not succeeded because of his failure to prove a demand, and has consequently been obliged to pay to the sheriff the money in question as the value of such goods, is an equitable action.

The failure of a defendant in an equitable action to plead affirmatively in its answer that the plaintiff has an adequate remedy at law, will be deemed to be a waiver of that point by the defendant.

A statement made by a firm to a mercantile agency that its net capital amounted to about $200,000, upon the faith of which statement, communicated by the agency to one of its subscribers, the latter sells goods to the firm in question, constitutes, where the statement is untrue, a fraudulent representation on the part of the vendee.

In such a case, proof of similar purchases shown to have been fraudulently made by the vendee on credit from other firms, is competent in favor of the plaintiff.

Where an absolute and unqualified admission is made in a pending cause, whether by written stipulation of the attorney, or as matter of proof on the hearing, it cannot be retracted on a subsequent trial unless by leave of the court.

APPEAL by the defendant, Daniel E. Sickles, sheriff of the city and county of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of July, 1896, upon the decis-

ion of the court, rendered after a trial at the New York Special Term, awarding the plaintiffs the sum of $7,349.65, principal and costs.

This appeal was transferred from the first department to the second department.

*A. Blumenstiel,* for the appellant.

*Frederic R. Kellogg,* for the respondents.

GOODRICH, P. J. :

This action is brought by the firm of Converse, Stanton & Cullen to charge the defendant, as trustee for the benefit of the plaintiffs, with the sum of $5,312.99, and interest, being the value of certain merchandise which is claimed to have been wrongfully in his possession. Between January 29 and April 25, 1890, the plaintiffs sold to the firm of Fechheimer, Rau & Co. certain goods of the value above stated. The plaintiffs claim that these sales were induced by the fraud of Fechheimer, Rau & Co., who failed on May 1, 1890, at which time certain judgments were entered against them, upon which execution was issued and the goods in question, with other goods of the last-named firm, were taken possession of by the sheriff.

The plaintiffs brought two replevin suits, in which the property in question was delivered to them. When those actions were brought to trial the plaintiffs' counsel admitted his inability to prove a demand for the goods before the commencement of the suit, and the complaint was dismissed for this reason, and judgment entered in the actions against the plaintiffs for the value of the goods. Thereupon the plaintiffs paid to the sheriff the amount of the judgments, at the same time serving upon him a notice that the money was the proceeds of the goods which had been obtained by the fraud of Fechheimer, Rau & Co.; that the plaintiffs were entitled thereto; that they demanded a repayment of the same, giving the sheriff warning not to apply it to any other purpose, and, upon the refusal of the sheriff to pay the money, brought this action for the purpose of impressing a trust upon the moneys thus paid as being the equitable proceeds of the property fraudulently obtained of them by Fechheimer, Rau & Co. A trial was had at Special Term, in which the judgments in the replevin suits were set up as a bar to

the maintenance of the equity action, and upon the ground that the money thus paid to the sheriff constituted, in law, a voluntary payment, and a judgment was entered in favor of the defendant, from which an appeal was taken to the General Term, which affirmed the judgment. An appeal was then taken to the Court of Appeals, which reversed the judgment. The action was retried at Special Term and resulted in a judgment for the plaintiffs, from which this appeal is taken.

The defendant claims : *First,* that the action in equity cannot be sustained, inasmuch as the plaintiffs had their remedy at law, and, at the opening of the trial, moved to dismiss the complaint upon that ground; the motion was denied and the defendant excepted. *Second,* that there was not sufficient evidence to justify the court in finding that the purchase was fraudulently made. *Third,* that evidence of contemporaneous frauds was improperly received. *Fourth,* that there was not sufficient evidence to establish the identity of the property. *Fifth,* that a stipulation admitting the identity of the goods, made upon a former trial, was improperly admitted upon the second trial. *Sixth,* that the amount of the judgment was too large, because it included interest up to the time of the demand upon the sheriff.

*First.* As to the equity jurisdiction we entertain no doubt. We think this is clearly established by the reasoning of the court in the case of *American Sugar Ref. Co.* v. *Fancher* (145 N. Y. 552, 561) and by other authority. (1 Pom. Eq. Juris. §§ 277, 278.) Moreover, the point has been waived by the failure of the defendant to plead this defense affirmatively. In the case of *Hawes* v. *Dobbs* (137 N. Y. 470) the court used the following language: " This is not a case where the plaintiff is defeated because, while he had a perfect right of action for equitable relief, he had also a complete remedy at law. If his action had been of that nature, then * * * he would have been entitled to maintain his action for equitable relief because the defendants had not set up in their answer as a defense that he had a remedy at law."

*Second.* We think there was ample evidence to establish the fraudulent representations inducing the purchase. The purchaser and seller were both subscribers to Dun's mercantile agency. The purchaser had made a specific statement to the agency, as of Novem-

ber 30, 1888, in which it was stated that their assets amounted to $334,900 and their liabilities to $141,200, thus showing a surplus of $193,700. In August, 1889, Fechheimer represented to Moore, an agent of Dun's, that since the inventory of November, 1888, there had been "no change but improvement" in the condition of the firm. The plaintiff Stanton testified as follows: "Q. Did you receive any information from any source as to any statement of financial condition which Fechheimer, Rau & Co. had made to Dun's mercantile agency? A. I received such information; I ascertained what statement they had made to Dun's mercantile agency. Q. What was the information that you received, as to this statement which they had made, from Dun's mercantile agency? A. That they had capital to about the amount of $200,000. Q. Do you mean by that gross capital or net capital? A. Net capital. Q. Was that the information that you received? A. That was the information I received." He also testified that he made inquiries among his fellow merchants, but what information he received from them is not in evidence. But he testifies that he relied upon this statement in selling the goods in question to Fechheimer, Rau & Co. This, within the decisions, constitutes a fraudulent representation, as the plaintiffs were entitled to rely upon it. (*Eaton, Cole & Burnham Co.* v. *Avery*, 83 N. Y. 34.)

*Third.* The evidence as to contemporaneous frauds consists of a similar purchase of goods, upon credit, from Bliss, Fabyan & Co., and from two other firms. The matter of this first firm resulted in litigation in which Bliss, Fabyan & Co. established their allegations. The court, in speaking of the fraud, said: "No attempt was made on the trial to justify the statement made by Fechheimer, Rau & Co. to Bliss, Fabyan & Co., in December, 1889. It was grossly untrue." (*Bliss* v. *Sickles*, 142 N. Y. 649.) It needs no citation of authority that contemporaneous frauds are evidence to establish the truth of an issue of a similar character between other parties.

*Fourth.* The identity of the goods was clearly established by the admission of the defendant's counsel, made upon the former trial, which was offered in evidence and is in the following language: "Defendant's counsel made no question as to the identity of the goods in the old replevin suit being the same goods which Mr. Stanton says he sold." At the present trial the defendant moved

to withdraw this concession, upon the ground that on the former trial it was given for special reasons. The court denied the application for leave to withdraw the concession. This refusal was proper, under the decision of *Owen* v. *Cawley* (36 N. Y. 600), where the court said: " Where an absolute and unqualified admission is made in a pending cause, whether by written stipulation of the attorney or as matter of proof on the hearing, it cannot be retracted on a subsequent trial unless by leave of the court." And also in *Herbst* v. *The Vacuum Oil Co.* (68 Hun, 222), where a stipulation in writing provided that the testimony given in a certain other action " may be read by either party upon the trial of the above-entitled action," it was held that this stipulation related not only to the first trial but to subsequent trials as well. The court said : " We find in this stipulation no limitation as to the trial at which it should be applicable. * *. * We have no doubt but that the learned justice at the Circuit was clearly right in holding that the same was binding and applicable to any trial so long as the defendant was not relieved from its obligation by order of the court procured in an affirmative application for that purpose, notwithstanding the notice served by the defendant after the first trial that it would not longer be bound thereby." This case was affirmed without opinion in 143 New York, 671. A similar decision was arrived at in the case of *Hine* v. *The N. Y. Elevated Railroad Co.* (149 N. Y. 161), where the court said: " The force of the stipulation was not affected by the reversal of the judgment. It was manifestly intended that in case of a new trial it should regulate and control the proofs and proceedings in the action. It contravened no rule of morals or public policy, and is as binding upon this court as the courts below." (See, also, *Clason* v. *Baldwin*, 152 N. Y. 211.) This disposes, also, of the fifth objection of the defendant, that the stipulation made upon the former trial was improperly admitted.

*Sixth.* As to the amount of the judgment, however, it appears that the value of the property returned to the plaintiffs in the replevin suits was $4,701.16. We think that interest does not commence to run upon this principal sum until the time when the money was paid to the sheriff and the demand made for its return, which was on the 12th day of July, 1892. The plaintiffs received the

goods from the sheriff under their claim to possession in the replevin actions, and on the judgments and executions they were bound to pay him the value of the property with interest, and interest should, therefore, be allowed them only from the date of such payment.

The judgment should be modified in this respect by deducting from the recovery the interest from July 12, 1892, up to July 6, 1896, the date of the judgment, and as thus modified affirmed, with costs.

All concurred.

Judgment modified by deducting from the recovery the interest from July 12, 1892, to July 6, 1896, and as thus modified affirmed, with costs.